Good morning. May it please the court, Wendy Musel on behalf of Mr. Plaskett, I would like to reserve three minutes for rebuttal. The issue at base that's presented before this court is whether the agency having violated the Age Discrimination Employment Act can hold itself above the law and does not have to play by the same rules that Mr. Plaskett does as a federal employee when adjudicating these matters for the EEOC. There's no dispute that the agency violated ADEA, the Age Discrimination Employment Act, it did not appeal that decision. There's also no dispute that the agency had during the course of the hearing violated seven separate discovery orders by the administrative judge player in the course and scope of that just ask a question about sort of the procedural posture, because this comes here on a petition for mandamus or for APA, you know, 706 action withheld or delayed. Is that the normal procedure in a case like this? I would have thought that there'd be an administrative award that comes to a final conclusion. And then there's some sort of statutory cause of action. Am I wrong on that? Or what brings us to this procedural posture? Very good question, Your Honor. What brings us to this procedural posture is the EEOC administrative judge issued two orders in 2012 following an evidentiary ruling. After that, the agency was required to take certain action, ordering back pay, injunctive relief, declaratory relief for Mr. Plaskett for violation of the law. Failed to do that. It also failed to pay the sanctions. As a result, Mr. Plaskett filed numerous enforcement actions with the EEOC Office of Federal Operations, which is their appellate arm, much like the Ninth Circuit. And that appellate arm indicated that indeed the agency was in violation of the law and required very specific action on behalf of the agency. And the EEOC OFO, if I may use the acronym, had provided specific action, both in orders 2017 and 2018. There was actually, I believe, four to five orders that specifically required action on behalf of the agency. But am I right that this isn't the normal posture this kind of case would make its way into federal court? Well, Your Honor, we did adjudicate this before the EEOC. We did try to... But is there a final adjudication? You say you adjudicated it. There is a final adjudication? Yes, Your Honor. So the adjudication... Then how come the amount... I don't understand how it can be final when it seems like the amount is still outstanding, as I understand it. I mean, there's a final, if you will, interim final sanction amount, but isn't the amount of back pay still somewhat up in the air? I don't believe so. If we look at the October 13th, 2017 order by the EEOC OFO, the EEOC at that time indicated it was undisputed the agency was partially out of compliance with its final action in December of 2012, and it indicated as followed, the agency shall reimburse with back pay with interest. They must determine the amount no later than 60 days. They have 60 days. But their response is, yeah, I mean, to me, that's not final. To me, there's still a final amount that has to be calculated. And as I understand the government's position, you can correct the record, but Mr. Plaskett has not submitted the information or data that's to satisfy the government that that final amount is $21,020.10. That's actually factually inaccurate, your honor. The October of 2017 order went on to say, if they dispute the amount of $20.20, they were required to do so then. And if there was an amount that was undisputed, pay that undisputed amount. They were also required to provide a compliance report. At that time, they had the opportunity and the requirement. So why wasn't the outcome of that, that the EEOC issues just sort of, well, here's our determination of the amount. We don't like what you've done. This is what we've seen with the evidence. And this is the some certain done. Why did that not happen? And then it come in some ordinary posture. So the EEOC did attempt to enforce its orders, your honor. It did do that in 2018. Did it ever calculate a final amount of back pay? That's a yes or no question. Did it ever calculate a final amount of back pay? No. Why not? That's a very good question. It the plaintiff, Mr. Plaskett, had stated that the amount that wasn't paid was $21,020.10. It provided it the option to dispute that it failed to do so. And I do want to. Don't you just go in that case? Don't you just go back to the EEOC and say you gave the government 60 days. They haven't disputed this. Give me an award for, I guess, 21,000 plus 7,000. And then it's over, isn't that? I mean, that's what I'm maybe Collins. I confused on the same question. Right. I did do that. I did that over four times, your honor. And why didn't the EEOC just give you a $27,000, $27,000, $28,032 judgment? Well, the EEOC, there's two different order or two different matters here. So I want to be clear. So I'm not conflating them for sanctions. It absolutely did. It indicated that this is the amount of sanction. It provided that amount was due. It denied the appeal. It denied the reconsideration. And then it had a fourth order indicating you must comply agency. So for that one, there is a specific amount that was within the order for the amount of the back. But hold on back up. That's still within the same case, though. Or did they segregate that off? Because that's the problem. If they didn't segregate that off as its own matter, then it's still not, I think, final until you get the whole thing wrapped up. The agency only appealed the sanctions, whether there was sovereign immunity and whether it violated the Anti-Deficiency Act as it related to sanctions. That's the only thing in this case that the agency had appealed. And so that's why you see that there's two different enforcement tracks on the same case, if that clarifies that matter. But I did want to address one of the questions that your honor Nelson had asked, which was didn't the agency ask the client, Mr. Plaskett, for information? And the answer is Mr. Plaskett in the hearing actually did provide information. He provided testimony. Additionally, three other management officials, including the deciding official, provided information regarding the fact that Mr. Plaskett had his own company. He had his own dozer. He fought fires. And given that we're here on mandamus, don't you have to show that it's clear and indisputable that you're entitled to the amount you're claiming? And I have a hard time seeing that it's clear and indisputable. The mandamus statute does indicate it has to be clear and certain and non-discretionary. And I believe we meet that standard. We had very specific orders by the EEOC OFO that required action that was bound by time. It's not atmospheric. It's not years later. It's bound by time. And the agency just simply failed to comply or engage in any way. It blew order after order. So when we sought mandamus and also under the Administrative Practices Act, which incidentally the agency in their briefing stated at page 38 that that was an error by the court. But we asked for enforcement of those underlying orders. So we asked that the agency comply. The agency again was required, if they wish to dispute the amount, to indicate that they did so. Very notably, I think, is the April 27, 2015 submission in response to the very initial enforcement order. The agency did not dispute that it was required to pay $21,020.10. Rather, it said, please just give us more time, despite the fact three years had already passed, Your Honor. So when they were given an opportunity to dispute that, they in their papers did not. They in fact indicated that, yeah, they owed it. And so we posit, Your Honor, that there was a clear, certain to non-discretionary duty. Further, there's the issue of waiver and latches. And here the agency sat on its rights. It did not assert these issues when it had the legal duty to do so. Rather, it's passed. When could it have previously raised the issue in federal court of the enforceability of the sanction order? It actually had multiple opportunities, and it did for the sanctions order. For the sanctions order, at the time that the EEOC hadn't given the initial sanctions order in 2012, it did appeal that order and said that it would not comply with the sanctions order. It then, their appeal- Do you have the right to go to federal court? Well, they certainly raised it here, Your Honor, but in that- You brought them here. I did bring them here, Your Honor. Could they have initiated a proceeding when they lost the administrative appeal? Could they, at that time, have brought a proceeding in federal court to resist the sanction order? And what would that have been? Well, my understanding is their right was to do what they did if they thought sovereign immunity was not waived, which is to appeal and task for reconsideration. So they did do that. So there's no waiver as to the sovereign immunity cost issue by the government? No. Where we've asserted the waiver latches was it relates to the $21,020.10 for the back pay. We did not assert waiver latches as it relates to the question of sovereign immunity. I'm happy to address the issue of sovereign immunity, if you like, in the 24 seconds I have left. Go ahead. So for sovereign immunity, there was two different levels of waiver. Those waivers were explicit, and those are found at 29 U.S.C. Section 633A, which prohibits age discrimination by federal employees as it does private employers. And more importantly is 29 U.S.C. Section 633B. This expressly indicated by Congress that the EEOC has the authority and the duty to adjudicate these matters. And it says, and I quote, the equal employment opportunity shall issue such rules, regulations, orders, and instructions as it deems necessary and appropriate to carry out its responsibilities under this section. And it did so specifically under 29 CFR 1614.104 and Management Directive 110. That's in Section 3 regarding the Administrative Judge Authority, where it very explicitly- That kind of very generic statutory language is normally not the sort of stuff of which waiver of sovereign immunity is made. The case law is pretty demanding to show a waiver of the government's sovereign immunity. And the fact that the EEOC can run a proceeding doesn't have clear and unambiguous language that it can impose monetary sanction out of the Treasury. I would respectfully disagree with that, Your Honor, insofar as the Congress empowered the adjudicatory body. That's a unique situation here. And it specifically indicated under 633B that it shall issue the rules, regulations, orders, and instructions in order to adjudicate. This is similar to the inherent authority that this court has and federal courts have in order to adjudicate matters. They must be able to control litigants and enforce their own orders. And so the EEOC, having been invested and directed by Congress to do so, did do so, as it relates to how to manage where there's violations of orders. And there were egregious violations here. I think this aptly demonstrates why that's necessary. And so Congress did afford such a waiver in 29 U.S.C. 633B. And the EEOC expressly in Management Directive 110 indicates that they're exercising that authority provided to them by Congress and explicitly indicates that sanctions, monetary sanctions, are among the arsenal that the judge has in order to address repeated violations of their orders without good cause. And I would be remiss in the seven seconds left if I did not address the real world consequences to federal employees if the deck is stacked against them. They have to follow the rules, and yet the federal employer does not. Okay, we'll give you a little bit of time for rebuttal. Mr. Yellen, go ahead. Good afternoon, Your Honors. May it please the Court. I'm Louis Yellen from the Department of Justice here today on behalf of the Army. I'd like to make three points with respect to the moonlighting claims that Mr. Plastid has presented to the Court today. We have a very different understanding of the record, and I think it's critical for the Court to make its own assessment of these disputed points. First, Mr. Plastid contends that the EEOC adopted the $21,000 plus determination of moonlighting pay, and counsel points to the October 2017 decision of the EEOC to support that claim. If the Court looks at page 606 of the excerpts of record, the EEOC says, while the record shows that the agency has been working with its payroll provider, and I'm skipping a little, to obtain reimbursement to complainant of those moonlighting earnings, neither party has submitted documentation on the sum thereof. And then on the very next page, the EEOC directs the Army to make the calculation with the cooperation of Mr. Plastid, including the requirement that Mr. Plastid submit all, and I'm quoting now, all relevant information requested by the agency. And I'm finishing my quotation. So it's simply not the case that the October 2017... Okay, and that was my understanding of it as well. But what we're hearing is that all of that information has been provided. And this is the second point. Yeah, so what is missing? What is missing, Your Honor? There has been no evidence, number one, of the threshold question of whether Mr. Plastid moonlighted prior to his separation with the Army in 2010. To establish moonlighting, you have to show that you were engaged in other work at the same time as you were working for the government. Counsel has... Can I back up? Because I thought the EEOC already made that determination. I mean, how else could the EEOC have said, hey, there's some amount? I thought all that was in dispute was the amount of money that was at issue. But you're now saying... You're saying the amount could be zero because there was no moonlighting. If Mr. Plastid establishes that he was working, I don't believe there's anything in the EEOC moonlighting decision that definitively there was in fact moonlighting. In fact, it assumes that there was some moonlighting. I think that's right. But it doesn't make that determination because there simply were not records supporting the claim. So to establish that one was engaged in moonlighting, you have to first show that you were working at the same time. And there is no evidence in the record at all. And what kind of evidence would satisfy that? Pay stubs from another job? That would be sufficient, but not necessary. An affidavit from an employer that Mr. Plastid... Yes, between time X and 2010, Mr. Plastid worked for us. That would be sufficient. But they also have to give the amount, apparently. Well, the employer need not give the amount. The Army and DOD would accept affidavits, sworn affidavits from Mr. Plastid, establishing the amount of time typically per week that he had worked for those companies. So the evidence is, if I might, this is jumping to the third point I wanted to make. This is evidence that is uniquely in Mr. Plastid's possession. The Army can't go out and determine who he worked for or how long he worked without input from Mr. Plastid. And that's why since 2015, the Army's been requesting this information. Back up, because how did the EEOC come up with this $21,000 figure? It seems like a very precise figure that doesn't exactly mesh with your statement that there was just no evidence provided. Your Honor, the EEOC did not come up with this $21,000 figure. It's nowhere in the order that counsel has referred to. It has been an assertion of Mr. Plastid throughout the litigation, but it is nowhere, the EEOC has nowhere less that amount. And as I mentioned a moment ago on page 606 of the ER, the EEOC expressly recognizes that neither party has put figures before the EEOC. And it told you to go work it out. Did it give you a specific time period though to do that? It did give a time period. And then contrary to opposing counsel's suggestion, it didn't put the burden on the Army to come back. It said if there is a dispute, let me see if I can find, the complainant may petition for enforcement or clarification of the amount in dispute. She claimed, counsel claims that that's what she did a number of times in 2018. Is that right? Is that not correct? Counsel did two things subsequent to this order. She raised the issue with an enforcement officer who directed the Army to provide counsel with a more definitive statement of the records that were necessary. The Army did that and received no records from counsel. Secondly, just before this litigation was begun, counsel filed a second enforcement action before the EEOC, but then counsel pre-terminated the EEOC's determination of that enforcement complaint by filing this action. Once the district court obtained jurisdiction over the claim, the EEOC lost its authority. So counsel has maintained multiple times that there are all of these enforcement orders. There are two enforcement orders in this record. One concerning the moonlighting, which we have just been discussing. And that doesn't have an amount. Exactly right. And the other deals with the separate issue of the sanctions. Am I right that this would normally come up through a different complaint? It has a choice of remedies. The complainant can go through the EEOC for its adjudication, or it can file a civil action in district court. The district court does not serve as an appellate reviewer of the EEOC's action. But if the EEOC comes up with a final award, and then the government doesn't pay, what is the action that follows? Then it might well be appropriate to bring either a mandamus or an APA claim. It would not be some other kind of statutory vehicle. That's correct. It would be an enforcement of a judgment action. It would just be a mandamus. Well, there is no judgment in the relevant sense, because it's an administrative determination. But it would be, in that context, presumably under the hypothetical as I'm understanding it, would be a binding determination on the Army. And if the agency fails to... The reason we don't see a lot of these mandamus petitions is because the government's complying with these orders. Of course. Exactly right, Your Honor. The government complies with its obligation as a matter of course. Okay, so if that's the case, then backing up to the 7,000, that does seem to be a some certain. Why hasn't the Army paid that amount? Because the United States Sovereign Immunity precludes the payment of sanctions awarded by the EEOC. Got it. Exactly. It's not an attorney's fee award, which is not, the EEOC does not provide for attorney's fees. Your position is the government can never have, you can't have sanction against, in the absence of a statute such as EJA or something like that, that would award specifically that. Yeah, that's exactly our position. Yes, Your Honor. If I might back up and raise one additional point of dispute in the record that I think is quite critical. Opposing counsel has a number of times said, well, all the evidence about the prior employment is already there in the record. Look at his resume, look at testimony before the EEOC. All of this evidence is only about prior experience and work history. There is no evidence in the record specifically identifying employment prior to Mr. Plaskett's separation with the Army in 2010. That's all that's needed here. I'd like to repeat, the burden on Mr. Plaskett is not huge. Let me just cut to the chase. Yes, Your Honor. Let's assume we deny the mandamus petition. We say that the government has sovereign immunity as to the monetary award. Although, I guess we don't even need to say that. We just need to deny, we would just deny the petition and this goes back down. It would then revert back to the EEOC and then Mr. Plaskett would just need to come in with an affidavit and say, I worked from this date to this date and I was paid $21,000 and the Army would then pay that? So, there wouldn't even need to be recourse to the EEOC. If Mr. Plaskett provided two types of affidavits, one from employers establishing work during his period of employment with the Army prior to his separation, that would establish the threshold question that he in fact was moonlighting and then he could provide an affidavit establishing how much work he did during that moonlighting. I worked X number of hours for X amount of pay during that period. Those two types of affidavits would be sufficient to allow the Army to reduce to a some certain the amount of moonlighting there is. And if those two affidavits came in, then within the next week after receiving that, the Army would cut a check for $21,020. So, I certainly can't say within the next week, Your Honor. It wouldn't be a question. You wouldn't be saying, oh, we've actually got sovereign immunity to that or oh, you had to go back to the EEOC. You're saying if you got those two items that you're just referenced, you would then pay him in due course. Yes. I mean, I don't want to preclude the possibility that there could be disputes about the validity of the affidavits and so forth. But if there were affidavits that were satisfactory to the Army and to the DOD accounting service to establish those two questions, first of all, the threshold question of moonlighting and second of all, the amount of moonlighting, assuming there were no dispute in that regard, yes, a check would be cut and the issue would be concluded. What I'm hearing, that could, because it doesn't have to go back to the EEOC, even if we didn't deny the mandamus petition, that could happen. Meaning they could, counsel could give that to you next week and you could start processing that. Absolutely, your honor. Is it your position that the only thing that has prevented the payment being made is that he has refused to provide the evidence that he was working, doing this moonlighting job during the time that he was employed by the Army. Is that right? Yes, your honor. So, Judge Nelson, I think you're quite right that while the case is pending, if Mr. Plaskett is interested and willing to provide the affidavits that we have requested, the case could conceivably be moved. I'm just wondering, and maybe it makes sense to talk to counsel, I just wonder if we shouldn't hold this case in abeyance. I guess we'll still have to decide something on the sanction because that'll still be in the tributes. Why don't we hear from the plaintiffs? Yeah, Mr. Yellen, unless you have something more. I have nothing more unless the court has questions. I do, what's your response to their argument that, you know, the Ninth Circuit has recognized the ability of the federal courts to sanction the government and litigation. Why shouldn't a similar theory apply in the administrative context? What's your response to that? There is no similar Article 3 backing, constitutional basis backing an executive branch agency, which is solely a creature of Congress. Even if it were the case that the courts have some inherent Article 3 authority, that would be constitutionally based. Executive branch agencies have only the power that Congress gave them. And there is zero precedent suggesting that executive branch agencies have authority to impose monetary awards in excess of what Congress has expressly and unequivocally authorized in a statute. There's just simply no basis for that. And there is case law indicating the general delegation of the authority to provide for the procedures to enforce the law is not sufficient to provide for sanctions. Yes, that's exactly right, Your Honor. And I think that especially is underscored in the context of the ADEA, which the EEOC has interpreted as not permitting it to award attorneys fees as a remedy. So that's just to say that the EEOC has understood the statute as not, as Congress has made a decision that attorney fees can't be awarded as a remedy, it would be highly anomalous to imply, excuse me, for the agency properly to be able to infer from the statute an authority to award fees as a sanction. But it's been nevertheless been doing that. It has, Your Honor. And this is the, I should sanctions and sovereign immunity issue. Okay, I think we have. Thank you, Your Honors. You may proceed with a rebuttal. We'll put a couple minutes on the clock and see what we need to talk about. Thank you. I very much appreciate it. When you asked questions about what would happen if we denied mandamus, would Mr. Plaskett still nonetheless be able to go back to the EEOC or obtain those monetary damages? There is no legal mechanism for that, Your Honor. What we're hearing from the government is that if Mr. First of all, let me back up. Is there an affidavit or what information is it in the record that you can point me to where you have provided the information that the government just asked for? So the information regarding moonlighting, there was during the course of the EEOC. I just want to know, is it in the record right now? Yes, Mr. Plaskett had provided information post the hearing also. Do you have a citation to the record before us where it's been provided? I'm sorry, Your Honor, I did not hear you. Give us the citation. Yes, I will have to identify that citation. My apologies. I don't have it at my fingertips. As I put into the record, he had provided information. Why didn't you just give them the affidavit they asked for? I'm sure they asked for it in the administrative process. Why didn't you just give it to them? We did give them records. We gave them time records, time sheets. We did provide that to them in 2013 and 2014. In 2015, they had already indicated, yes, we agree that we owe you the $21,020.10. Where are you seeing that? That's in the submission on April 27, 2015 by the agency, their response to the enforcement order. Their response to the enforcement order at that time was not to dispute the amount that Mr. Plaskett had tendered, but rather to say, we just need more time. In essence, DFAS needs more time to pay. Further, DOD financial regulation. With all due respect, that's a little bit different than conceding the amount. I mean, they may have said we need more time, but I don't think that that necessarily means they conceded the amount. Here's, I mean, what is so hard about getting the affidavit that was just requested? We would be fine with settlement in advance, Your Honor. We actually indicated. I got to be careful about that because I don't think we're going to get there. I mentioned it, but we've still got a sanctions issue we've got to deal with. But at least as to the $20,000, next week, can't you go get a couple of affidavits and get them over to the government and get this moving? We'd be happy to provide a statement or affidavit from Mr. Plaskett, which is what is in the. They need the employer as well. That's not required by the regulations so that it's not bound in law. We're happy to try to get it. The problem here is we're in 2021. Yeah, it's eight years ago. Right. And as I put in our papers, it's a three-year statute to keep records both under ADEA as well under the FLSA. So it's requiring Mr. Plaskett nearly a decade after. Well, but that information has to be provided. You have and you still haven't given us a record citation. Maybe you'll have to give us a supplemental. You can provide a citation after we. Yeah. I think that's kind of what we're. I think we have. I think we have an from you to the records. Otherwise, I think you've kind of you kind of have some direction on what would work and hopefully you can do that and and spare us on the first part of this case. And if that happens, I just request that the parties let us know that when that happens, if it does. Otherwise, I think we've got everybody's argument and we'll go ahead and and submit the case. So thank you both. Very hopefully this was helpful and it was definitely helpful for us. Appreciate you. Thank you. Your honors.
judges: Schroeder, Nelson, Collins